**John L. HILL, Francine Barnes, Franchot Barnes, Francesca Barnes, and Glory Celestine, Plaintiffs,**

v.

**BLUE CROSS AND BLUE SHIELD OF MICHIGAN, Defendant.**

**No. CIV.03–40025.**

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 21, 2003.

Elwood S. Simon, Michael G. Wassmann, Lance C. Young, Elwood S. Simon Assoc., Birmingham, MI, for John L. Hill, plaintiff.

G. Christopher Bernard, Detroit, MI, for Blue Cross and Blue Shield of Mich., defendant.

Michael G. Wassmann, Elwood S. Simon Assoc., Birmingham, MI, for Francine Barnes, Franchot Barnes, Francesca Barnes, Glory Celestine, plaintiffs.

## OPINION AND ORDER
## OF DISMISSAL

GADOLA, District Judge.

This civil action is being prosecuted under the Employee Retirement Income Security Act ("ERISA"). Before the Court is Defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure: dismissal for failure to state a claim upon which relief can be granted. The Court held a hearing on this matter on November 5, 2003. For the reasons set forth below, the Court will grant the motion and dismiss this civil action without prejudice.

## I. BACKGROUND

On September 28, 1999, the General Motors Corporation ("GM") and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") entered into a collective bargaining agreement ("CBA"). As a result of this CBA, GM sponsors a health care program ("program"), and this program is an ERISA-protected employee benefit plan. GM has selected Defendant to administer health care coverage under the program.

Plaintiff Hill, Plaintiff Francine Barnes and Plaintiff Celestine are participants in the program. Similarly, Plaintiff Franchot Barnes and Plaintiff Francesca Barnes (the adult son and daughter of Plaintiff Francine Barnes, respectively) were covered by the program at times relevant to their claims via the mother's participation in the program.

Turning first to Plaintiff Hill, on or about December 11, 2000, Plaintiff Hill went to an emergency room seeking treatment for an infected growth on his back.

Under the program, Defendant paid the facility portion of Plaintiff Hill's claim for this emergency room visit, but Defendant rejected the $108.00 physician portion of the claim. According to Defendant's corresponding explanation of benefits ("EOB") form to Plaintiff Hill, Defendant rejected the physician portion of the claim because Plaintiff Hill's condition was not an emergency. Plaintiff Hill then contacted his union representative, and the representative informed Plaintiff Hill that he had to pay the claim personally, which he did on July 19, 2002.

The four additional Plaintiffs present similar circumstances. As with Plaintiff Hill, Defendant denied payment for at least a portion of emergency rooms visits by these Plaintiffs. Unlike Plaintiff Hill, however, there is no indication that the claims of these four Plaintiffs were ever brought to the attention of a union representative.

Furthermore, Plaintiffs' amended complaint asserts individual claims as well as the claims of a purported class: Plaintiffs allege that Defendant systematically violated ERISA in its administration of emergency health care benefit claims under the GM–UAW health care program as well as all other employer-sponsored employee benefit plans administered by Defendant.[1] Plaintiffs allege that they and the purported class members are entitled to relief for these alleged violations of ERISA.

Specifically, the amended complaint contains four counts. Count I alleges breach of fiduciary duty by Defendant under 29 U.S.C. § 1104(a)(1).[2] Count II alleges that Defendant is liable for the breaches of co-fiduciaries under 29 U.S.C. § 1105(a).[3] Counts I and II seek equitable relief pursuant to 29 U.S.C. § 1132(a)(3).[4] Further,

1. A similar lawsuit is proceeding, as a class action, against Defendant in state court alleging violations of Michigan law. The state suit was removed to federal court, before the Honorable Denise Page Hood, on an ERISA-preemption theory. Judge Hood ruled that certain state law claims in the case were preempted by ERISA and that the plaintiffs bringing these ERISA-preempted claims had not exhausted their administrative remedies. *See Tinman v. Blue Cross & Blue Shield of Mich.*, No. 00–72327, 2002 WL 230803, at *3–4 (E.D.Mich. Jan.31, 2002) (Hood, J.). Judge Hood granted summary judgment for Defendant with respect to the ERISA-preempted claims, and, once Judge Hood adjudicated the federal question, she declined to exercise supplemental jurisdiction over the remaining state law claims remanding them to state court. *See id.* at *4.

2. 29 U.S.C. § 1104(a)(1): "[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; ... (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; ... and (D) in accordance with the documents and instruments governing the plan..."

3. 29 U.S.C. § 1105(a): "In addition to any liability which he may have under any other provisions [under 29 U.S.C. §§ 1101–1114], a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with [29 U.S.C. § 1104(a)(1)] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

4. 29 U.S.C. § 1132(a)(3): "A civil action may be brought... (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision [under 29

pursuant to 29 U.S.C. § 1132(a)(1)(B), Count III seeks to recover benefits denied as a result of the same breaches alleged in Counts I and II.[5] Finally, under 29 U.S.C. § 1109, Count IV seeks restitution and recovery of any losses sustained by the pertinent employee benefit plans as a result of the same breaches alleged in Counts I and II.[6] In response to these claims, Defendant has moved to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure: dismissal for failure to state a claim upon which relief can be granted.

## II. LEGAL STANDARD

Rule 12(b)(6) authorizes the district courts to dismiss any complaint that fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Rule 12(b)(6) affords a defendant an opportunity to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *See QQC, Inc. v. Hewlett–Packard Co.*, 258 F.Supp.2d 718, 721 (E.D.Mich.2003) (Gadola, J.). In applying Rule 12(b)(6), the Court must presume all well-pleaded factual allegations in the complaint to be true and draw all reasonable inferences from those allegations in favor of the non-moving party. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993).

The Court will not, however, accord the presumption of truthfulness to any legal conclusion, opinion, or deduction, even if it is couched as a factual allegation. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). The Court will not dismiss a cause of action under the Rule 12(b)(6) standard "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Although the pleading standard is liberal, bald assertions and conclusions of law will not enable a complaint to survive a motion pursuant to Rule 12(b)(6). *See QQC*, 258 F.Supp.2d at 721; *see also Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996).

## III. CONSIDERATION OF PROGRAM DOCUMENTS

To adjudicate a Rule 12(b)(6) motion, the Court must not consider matters outside the pleadings. *See* Fed.R.Civ.P. 12(b). Nevertheless, Rule 10(c) of the Federal Rules of Civil Procedure provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed.R.Civ.P. 10(c). Rule 10(c) is permissive, however, and a plaintiff is not obligated to attach to the complaint a written instrument upon which the action is premised. *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th

---

U.S.C. §§ 1101–1200] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions [under 29 U.S.C. §§ 1101–1200] or the terms of the plan."

**5.** 29 U.S.C. § 1132(a)(1)(B): "A civil action may be brought(1) by a participant or beneficiary... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

**6.** 29 U.S.C. § 1109(a): "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by [29 U.S.C. §§ 1101–1200] shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

Cir.1997). Nonetheless, if the plaintiff neglects to attach the written instrument upon which he relies, the defendant may introduce the pertinent exhibit. *See id.* "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Id.* Therefore, although a court may not consider matters outside the pleadings on a motion to dismiss, documents properly introduced by a defendant "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *QQC*, 258 F.Supp.2d at 721 (quotation omitted).

Here, although the amended complaint refers to the program and not program documents, the amended complaint is based on rights under the program that are controlled by the program's provisions as described in the program's documents. *See Weiner*, 108 F.3d at 89. Thus, the Court should consider the program documents (which are attached to Defendant's motion to dismiss as Exhibit A) along with the amended complaint because they were incorporated by reference in the amended complaint to rights under the program and are central to Plaintiffs' claims. *See Weiner*, 108 F.3d at 89; *QQC*, 258 F.Supp.2d at 721; Fed.R.Civ.P. 10(c); Fed.R.Civ.P. 12(b).

## IV. ANALYSIS

Defendant first argues that this action should be dismissed because Plaintiffs failed to exhaust available administrative remedies prior to filing a denial-of-benefits suit under ERISA. For the reasons stated below, the Court will dismiss this action without prejudice on this ground. Alternatively, Defendant argues that the Court should dismiss this action because the Labor Management Relations Act ("LMRA"), and not ERISA, controls and because

Plaintiffs are not entitled to relief under the LMRA. For the reasons stated below, the Court concludes that Defendant's alternative argument lacks merit.

### A. Exhaustion of Administrative Remedies under ERISA

Plaintiffs allege four counts seeking recovery of wrongfully denied benefits (Count III) and claiming breach of fiduciary duty (Counts I, II, and IV). Defendant maintains that Plaintiffs have failed to exhaust available administrative remedies under the program before bringing this action.

### 1. The exhaustion requirement is applicable to all of Plaintiffs' claims

■ Before one may commence an action asserting a denial-of-benefits claim under an ERISA-protected plan, one must first exhaust whatever avenues of redress are available under the plan. *See Weiner*, 108 F.3d at 90. Thus, exhaustion of administrative remedies is a prerequisite to a denial-of-benefits action under ERISA. *See id.* Consequently, when a plaintiff should have exhausted available administrative remedies and failed to do so, the action should be dismissed. *See id.* at 90–91.

■ If a plaintiff brings a genuine breach-of-fiduciary-duty action (as opposed to a denial-of-benefits action) under ERISA, however, the exhaustion requirement is not so clear cut. "[S]ome courts have held that the exhaustion requirement does not apply to a claim for breach of fiduciary duty, because such a claim involves an alleged *violation of the statute, not the plan.*" *See id.* at 91 (emphasis added) (citing *Graphic Communications Union v. GCIU–Employer Retirement Benefit Plan*, 917 F.2d 1184, 1187 (9th Cir.1990)); *see also Fallick v. Nationwide*

*Mut. Ins. Co.*, 162 F.3d 410, 418–19 n. 6 (6th Cir.1998) (collecting cases).

Nevertheless, the United States Court of Appeals for the Sixth Circuit in *Weiner v. Klais & Company* held that the exhaustion requirement applies when a plaintiff attempts to bring a denial-of-benefits action disguised as a breach-of-fiduciary-duty action. *See* 108 F.3d at 91. The Sixth Circuit in *Weiner* ruled as follows:

> Regardless of whether exhaustion is required for such claims, however, plaintiff here is *essentially claiming that defendant breached its fiduciary duty by denying him payments which he was entitled to under the plan.* In other words, *the basis of this claim is the denial of benefits,* which plaintiff had an obligation to [exhaust available administrative remedies] before he sued in federal court. *Plaintiff cannot get around the exhaustion requirement by simply disguising his claim as a breach of fiduciary duty. See Drinkwater v. Metropolitan Life Ins.,* 846 F.2d 821, 826 (1st Cir.1988) ("If we were to allow claimants to play this characterization game, then the exhaustion requirement would be rendered meaningless.").

*Weiner,* 108 F.3d at 91 (emphasis added).

The Sixth Circuit's holding in *Weiner* is controlling in this case because a close review of the amended complaint shows that the breach-of-fiduciary-duty claims are, in truth, denial-of-benefits claims. In Count I, Plaintiffs alleges that Defendant breached its fiduciary duties by denying benefits in violation of the terms of the program. Plaintiffs frame their claim for breach of fiduciary duty in Count I as follows:

> By systematically administering and *denying benefits* for emergency medical services *through methods prohibited by plan documents,* and by doing so in furtherance of [Defendant's] and/or plan

sponsor's interests, rather than the sole interest of plan participants and beneficiaries, [Defendant] has breached its fiduciary duties of loyalty and care to Plaintiffs and the Class.

Amend. Compl. at ¶ 55 (emphasis added). This same text appears in Counts III and IV. *See id.* at ¶ 64 (Count III), ¶ 70 (Count IV). Additionally, Count II employs similar language:

> By knowingly applying inappropriate criteria to improperly *deny benefits* for emergency medical services to ERISA plan participants and beneficiaries, *in violation of the terms of the plan documents,* for the benefit of [Defendant] and the plan sponsors, [Defendant] and the plan sponsors have jointly violated [their fiduciary duties set forth in] 29 U.S.C. § 1105(a)(1), § 1105(a)(2) and § 1105(a)(3).

Amend. Compl. at ¶ 60 (emphasis added). Counts III and IV include nearly identical paragraphs to this paragraph from Count II. *See id.* at ¶ 66 (Count III), ¶ 72 (Count IV); *see also id.* at ¶ 67.

Plaintiffs argued that their concerns about denial of benefits are ancillary to their more fundamental concerns about breaches of fiduciary duties. *See generally Fuller v. Fruehauf Trailer Corp.,* 168 F.R.D. 588, 603 (E.D.Mich.1996) (Rosen, J.). The aforementioned text from Counts I, II, III, and IV show otherwise: as in *Weiner,* Plaintiffs are claiming that Defendant breached its fiduciary duty by denying benefits in violation of the program. *Weiner,* 108 F.3d at 91. Accordingly, the exhaustion requirement is applicable to all of Plaintiffs' claims. Count III is a pure denial-of-benefits claim, and Plaintiffs concede that it is on page two of the response to the motion to dismiss. Further, like the attempted breach-of-fiduciary-duty claim in *Weiner,* Counts I, II, and IV in this case are claims for benefits wrongfully denied

under the terms of the program, as opposed to claims for violations of ERISA itself. *See Weiner,* 108 F.3d at 91. Therefore, as in *Weiner,* the exhaustion requirement is applicable to the attempted breach-of-fiduciary-duty claims in this action.

■ In further support of this conclusion is the Sixth Circuit's decision in *Wilkins v. Baptist Healthcare, Inc.,* 150 F.3d 609, 615 (6th Cir.1998), which precludes Plaintiffs from bringing their claims for § 1132(a)(3) relief in Counts I and II. In *Wilkins,* the Sixth Circuit held as follows:

> The Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies. *Varity [Corp. v. Howe,* 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) ]. *Because § 1132(a)(1)(B) provides a remedy for Wilkins's alleged injury that allows him to bring a lawsuit to challenge the Plan Administrator's denial of benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to § 1132(a)(3)* .... *To rule in Wilkins's favor would allow him and other ERISA claimants to simply characterize a denial of benefits as a breach of fiduciary duty, a result which the Supreme Court expressly rejected. Varity,* [516 U.S. at 515].

*Wilkins,* 150 F.3d at 615–16 (emphasis added).

The Sixth Circuit recently reaffirmed this holding from Wilkins in *Marks v. Newcourt Credit Group, Inc.,* 342 F.3d 444, 454 (6th Cir.2003). In *Marks,* the Sixth Circuit held:

> In *Wilkins,* we concluded that the *plaintiff could not bring a cause of action for breach of fiduciary duty pursuant to § [1132](a)(3) where § [1132](a)(1)(B) provided a remedy for his alleged injury.* Section § [1132](a)(1)(B) permitted Wilkins to bring a lawsuit to challenge the administrator's denial of benefits. In this case, Marks is permitted to file and has filed a suit pursuant to the same provision, challenging the Newcourt's administrative decision to deny him benefits. Therefore, because the district court is correct that ERISA § [1132](a)(1)(B) provides plaintiff *a remedy* for the alleged injury, the denial of benefits, and allows him to bring a lawsuit to challenge the denial of benefits, we affirm the dismissal of Marks's claim for breach of fiduciary duty.

*Marks,* 342 F.3d at 454 (internal quotations and citations omitted).

Here, Count III is a denial-of-benefits claim under § 1132(a)(1)(B). Thus, Plaintiffs, like the plaintiffs in *Wilkins* and *Marks,* may not pursue a breach-of-fiduciary-duty claim under § 1132(a)(3) because they have other avenues of relief available through the administrative remedies of the program and then, after those remedies are exhausted, under § 1132(a)(1)(B). *See Marks,* 342 F.3d at 454; *Wilkins,* 150 F.3d at 616 (because plaintiff had an adequate claim under § 1132(a)(1)(B), he had "no cause of action for a breach of fiduciary duty under § 1132(a)(3)").[7] Consequently, because

---

**7.** Plaintiffs cite to this Court's prior decision in *Helwig v. Kelsey–Hayes Co.,* 907 F.Supp. 253 (E.D.Mich.1995) (Gadola, J.), as an example to support their proposition that they can maintain a breach-of-fiduciary-duty claim under § 1132(a)(3) when they also have a denial-of-benefits claim under § 1132(a)(1)(B).

The Court notes, however, that *Helwig* predated the Supreme Court's decision in *Varity* (1996) as well as the Sixth Circuit's rulings in *Wilkins* (1998) and *Marks* (2003). Thus, this aspect of *Helwig,* on which Plaintiffs rely, has been superceded by case law developments since *Helwig* was decided. *See Marks,* 342

*Wilkins* precludes breach-of-fiduciary-duty claims in this setting,[8] all that remains for Plaintiffs are denial-of-benefits claims, and, since Plaintiffs are required to exhaust available administrative remedies before bring denial-of-benefits claims, Plaintiffs are required to exhaust available administrative remedies as a prerequisite to bringing this action. *See Marks,* 342 F.3d at 453–54; *Wilkins,* 150 F.3d at 615–16.

## 2. Plaintiffs have not exhausted available administrative remedies

Having determined that Plaintiffs are required to exhaust administrative remedies before bringing this action, the Court now turns to whether or not they have exhausted their available administrative remedies under the program.

The program includes an administrative review procedure. The procedure for denied claims is a four-step process involving GM and UAW representatives. *See* Mot. Dismiss Ex. A at ¶ 187–88. Step one begins with a claimant asking a union representative to review a disputed claim with a designated management representative. The management representative then obtains additional information from Defendant, and Defendant responds with information on what, if anything, can be done to support the claim. If the claim is not resolved, then, in step two, the claim is referred to the UAW on an appeal form. In step three, the UAW takes the matter to GM for a joint review. Also, the UAW requests a review by Defendant via GM. Finally, in step four, if the claim is still denied in full or in part, Defendant prepares a written report that includes the pertinent reasons for the denial.

Initially, it is important to note that, contrary to Plaintiffs' suggestion, the use of permissive language (e.g., "may") in the text of the program's claim review provisions does not permit one to avoid the exhaustion requirement. *See United Steelworkers of Am. v. Commonwealth Aluminum Corp.,* 162 F.3d 447, 453 (6th Cir.1998) ("we have held that such a permissive may does not permit a plan participant to forego the administrative claims procedure and simply file suit under ERISA." (citing *Baxter v. C.A. Muer Corp.,* 941 F.2d 451, 454 (6th Cir.1991))).

According to the allegations in the amended complaint, Plaintiff Hill failed to complete step one of the program's review process. After receiving Defendant's denial of benefits, the amended complaint alleges that Plaintiff Hill contacted his union representative. The amended complaint does not state, however, that Plaintiff Hill requested that his union representative review the disputed claim with the appropriate management representative, as required by step one. Further, Plaintiff Hill has not even suggested that his union representative and the management representative ever reviewed his claim or that the process proceeded beyond step one. Rather, the amended complaint simply states that the union representative informed Plaintiff Hill that Plaintiff Hill had to pay the claim personally. Thus, the amended complaint, on its face, demonstrates that Plaintiff Hill has not exhausted available administrative remedies. *See Brooks v. Gen. Motors Corp.,* 203 F.Supp.2d 818, 824–25 (E.D.Mich.2002) (Hood, J.). Furthermore, Plaintiffs have

---

F.3d at 454; *Wilkins,* 150 F.3d at 615–16. Accordingly, Plaintiffs' argument in this regard lacks merit.

**8.** In the pertinent discussion of § 1132(a)(3) and § 1132(a)(1)(B), *Marks* made mention of

§ 1109 (which is at issue in Count IV), thereby indicating that the holding of *Wilkins* could be expanded to include breach-of-fiduciary-duty situations under § 1109. *See Marks,* 342 F.3d at 453–54.

not indicated that the claims of the four other Plaintiffs were ever even brought to the attention of a union representative, thereby indicating a complete failure to begin the administrative review process.

Moreover, if, as Plaintiffs suggest, the Court were to rule that Plaintiff Hill exhausted his administrative remedies once the union representative instructed Plaintiff Hill to pay the claim personally, the entire ERISA exhaustion requirement would be rendered meaningless. Under such a ruling, Plaintiff Hill could avoid the internal procedures of the program and jump to federal court without Defendant ever having an opportunity to administratively defend its denial of benefits. Defendant, and others like Defendant, would be subject to federal litigation merely because a single local union representative declined, for whatever reason, to administratively pursue a claim.[9] In addition, the local union representative is Plaintiff Hill's agent, and what the agent did or failed to do is attributable to Plaintiff Hill for ERISA exhaustion purposes. *See Brooks*, 203 F.Supp.2d at 824–25 (holding an employee accountable for administrative procedures assigned to his union representative). Accordingly, administrative remedies have not been exhausted in this case.

### 3. No exceptions to the exhaustion requirement apply

■ Finally, the Court must determine if Plaintiffs qualify for an exception to the exhaustion requirement enabling them to bring this action without having exhausted administrative remedies. In this regard, Plaintiffs claim that it would be futile to pursue administrative remedies and/or these remedies are inadequate. *See Fallick*, 162 F.3d at 419.

■ "The standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made." *Id.* "A plaintiff must show that 'it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision.'" *Id.* (quoting *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir.1996)).

Here, Plaintiffs do not allege that denial on administrative appeal is certain. As a result, they have failed to meet their burden under *Fallick*, 162 F.3d at 419. In fact, the amended complaint flatly contradicts the certainty of denial: the amended complaint states that Defendant "has been able to thwart lawsuits for some time by either paying claims when inquiries are made or by requiring the aggrieved plan participants to engage in lengthy administrative inquiries and appeals." Amend. Compl. at ¶ 39. In this statement, the amended complaint essentially admits that the administrative review process is adequate and that some denied claims have been paid upon administrative review. Therefore, Plaintiffs have failed to show that the administrative review process in this situation is futile or inadequate. *See Fallick*, 162 F.3d at 419. Consequently, exhaustion of administrative remedies is a prerequisite to bringing this action and the failure to do so requires that this action be dismissed.

---

9. To the extent this Court held otherwise in a portion of a prior opinion, that portion of the prior opinion is overruled: *McCoy v. Metro. Life Ins. Co.*, 861 F.Supp. 40, 42 (E.D.Mich. 1994) (Gadola, J.) ("At the third step [of the administrative review process], the decision to appeal further is solely within the discretion of the union representative. With the representative's decision to not continue with the appeal, plaintiff was at the end of his remedies under the plain language of the plan.").

## B. The application of the LMRA versus ERISA

■ Additionally, Defendant moves to dismiss the amended complaint by arguing that this case is governed by the LMRA, and not ERISA. Defendant contends that since the terms of the program are a part of the CBA between GM and the UAW and since the Court would have to interpret the terms of the CBA to adjudicate this case, the LMRA controls. Further, Defendant argues that Plaintiffs are not entitled to relief under the LMRA. This alternative argument lacks merit.

In support of this argument, Defendant relies exclusively on a recent Sixth Circuit case, *Aloisi v. Lockheed Martin Energy Sys., Inc.*, 321 F.3d 551, 555–57 (6th Cir. 2003). *Aloisi* adjudicated a situation that involved conflicting statute-of-limitations periods under the LMRA and ERISA. *See id.* at 555. In *Aloisi*, the Sixth Circuit stated:

> This court and other circuits have repeatedly held that claims involving rights created by a CBA are governed by the LMRA. Applying the LMRA in the present case is the logical choice because Aloisi's claims are based solely on noncompliance with the medical arbitration procedure set forth in the CBA, not on any similar requirements specified by ERISA.... ERISA explicitly provides that it does not "supersede" any federal law. 29 U.S.C. § 1144(d). If we were to apply the provisions of ERISA instead of the LMRA, we would be allowing ERISA to supersede a federal law. The LMRA therefore applies to Aloisi's claims.

*Id.* at 555–56.

In this particular case, Defendant's argument and reliance on *Aloisi* are misplaced for three reasons. First, the plaintiff in *Aloisi* based her claims "*solely* on noncompliance with the medical arbitration procedure set forth in the CBA, not on any similar requirements specified by ERISA" and that is why the Sixth Circuit found it logical to apply LMRA and not ERISA. *Id.* at 556 (emphasis added). Here, the situation is markedly different. As Defendant artfully articulated in its motion and as described *supra*, this action is an ERISA denial-of-benefits action against a health care administrator. Thus, unlike *Aloisi*, this case is not solely about an employer's noncompliance with a CBA. *See id.*

Second, the plain language of the program accentuates the difference between this case and *Aloisi*. Article I, section 2(c) of the program explicitly states that any disputes involving the program are not subject to the CBA's regular grievance procedure. *See* Mot. Dismiss Ex. A at 4 ("It is understood that the grievance procedure of any collective bargaining agreement between the parties hereto shall not apply to this Program or any contract in connection herewith."). Thus, denial-of-benefits claims under the program are regulated, as described *supra*, by the program's four-step process and not by the CBA grievance procedure. Again, in *Aloisi*, noncompliance with the CBA's grievance procedure was the sole issue, *see id.* at 556; here, it is not.

Third, there is no LMRA versus ERISA conflict in this case as there was in *Aloisi*, which dealt with a conflict in statute-of-limitations periods. *See id.* at 555. While it is undisputed that ERISA does not supersede the LMRA, it is equally true that ERISA can coexist with the LMRA when ERISA does not conflict with the LMRA. *See generally Local 6–0682 Int'l Union of Paper Allied–Indus., Chem. & Energy Workers v. Nat'l Indus. Group Pension Plan*, 342 F.3d 606 (6th Cir.2003) (a collective bargaining agreement was present and the case was adjudicated under

ERISA); *Gard v. Blankenburg,* 33 Fed. Appx. 722 (6th Cir.2002) (same); *In re Gen. Motors Corp.,* 3 F.3d 980, 984–85 (6th Cir.1993) (suggesting that plaintiff had the option of bringing his cause of action under the LMRA or ERISA).

 For Defendant's theory to prevail, every ERISA denial-of-benefits claim involving an ERISA-protected plan that was created under a CBA could only be prosecuted under the LMRA. *Aloisi* does not support such a revolutionary theory. Rather, *Aloisi* adjudicated a situation in which ERISA was in conflict with the LMRA; in such a situation, the LMRA clearly controls. *See id.* at 555; 29 U.S.C. S 1144(d). When such a conflict is not present, "the law has become clear that suits to enforce [employee benefit plan] rights obtained by a participant or a beneficiary under the terms of a collective bargaining agreement may be brought under ERISA § 502 [29 U.S.C. § 1132] or under § 301 [29 U.S.C. § 185] of the [LMRA]." Cooke, 1 *ERISA Practice & Procedure* § 2:32, at 2–197 (2d ed.2003) (footnotes omitted). Consequently, this action is properly brought under ERISA, and Defendant is not entitled to dismissal on its LMRA argument.

## V. CONCLUSION

 ACCORDINGLY, IT IS HEREBY ORDERED that Defendant's motion to dismiss [docket entry 5] is **GRANTED**, to the extent stated in this opinion and order, and that this civil action is **DISMISSED WITHOUT PREJUDICE.**[10]

**SO ORDERED.**

---

**10.** When a district court dismisses an action due to a plaintiff's failure to exhaust administrative remedies and does not dismiss it on the merits of the plaintiff's claims, the district court should dismiss the action without prejudice. *See Ravencraft v. UNUM Life Ins. Co. of Am.,* 212 F.3d 341, 344 (6th Cir.2000).