Stephen BIROS, et al.,
Plaintiffs–Appellants,

v.

SPALDING–EVENFLO CO., INC.,
Defendant–Appellee.

No. 90–1326.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 11, 1991.

Decided June 11, 1991.

Randall D. Fielstra (argued), Fielstra, Flynn, Reider, Wierengo & Brown, Muskegon, Mich., Loyal Snyder, Washington, D.C., for plaintiffs-appellants.

Joseph J. Vogan, Robert J. Eleveld (argued), Varnum, Riddering, Schmidt & Howlett, Grand Rapids, Mich., for defendant-appellee.

Before NELSON, Circuit Judge, WELLFORD *, Senior Circuit Judge, and MEREDITH **, District Judge.

MEREDITH, District Judge:

This appeal from the United States District Court for the Western District of Michigan requires us to determine the accrual date of a § 301 cause of action for nonpayment of retiree benefits. In addition, prior to argument, we asked the parties to brief the issue of whether the notice of appeal, which listed only two of the 92 plaintiffs appealing, is valid for the 90 plaintiffs who were not named. Finally, during oral argument, we asked the parties to file supplemental briefs on the issue of whether the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* (ERISA), was the exclusive remedy for the plaintiffs.

For the reasons stated *infra,* we hold (1) that we lack jurisdiction over the appeal of 90 plaintiffs who are not listed in either the caption or body of the notice of appeal; (2) that ERISA is not the exclusive remedy; and (3) that the district court properly determined a date no later than September 1981 to be the date of accrual. Accordingly, we AFFIRM the decision of the district court.

---

* The Honorable Harry W. Wellford assumed senior status January 21, 1991.

** The Honorable Ronald E. Meredith, Judge, United States District Court for the Western District of Kentucky sitting by designation.

Before turning to our resolution of the issues, it is first necessary to briefly outline the facts, none of which is in dispute. All 92 plaintiffs are retired industrial workers. Before their retirement, all 92 plaintiffs were employees of the Grand Haven, Michigan plant of the AP Parts Company. AP Parts Company was a subsidiary of Questor Corporation, which no longer exists, and the defendant, Spalding–Evenflo, is the successor to Questor. Prior to 1980, the collective bargaining agreement between AP Parts Company and the Allied Industrial Workers Union (Union) provided that AP Parts Company would pay health insurance premiums on behalf of the 92 plaintiffs and all other retired employees.

In 1980, AP Parts Company decided to close its Grand Haven plant and, as part of the closing process, negotiated a plant closing agreement with the Union. As part of that agreement, which was signed in January of 1981, AP Parts Company agreed to continue to make the insurance payments, but limited the payments to the current amount plus one increase of no more than ten percent. In July of 1981, all 92 plaintiffs were notified that the one allowed increase had already taken place and that, beginning September 1, 1981, they would be required to pay a portion of their premiums. In all subsequent years, the 92 plaintiffs have received similar notices and have paid an ever-increasing share of their premiums.

In January of 1986, five years after the plant closing agreement was signed and more than four years after the notices were sent and the retired employees began paying premiums, the 92 plaintiffs filed suit against Questor Corporation seeking reimbursement of all premiums paid. Spalding–Evenflo, the successor to Questor, was never served. That suit apparently was dismissed.

On September 22, 1988, almost eight years after the plant closing agreement was signed and over seven years since the notices were sent, the 92 plaintiffs filed this suit against the defendant, Spalding–Evenflo. In December of 1988, the defendant moved for summary judgment on the grounds that the statute of limitations was three years and that the action accrued no later than September of 1981. The district court concluded that the applicable statute of limitations was six years rather than three and that the action accrued in September of 1981. Thus, the statute of limitations would have run in September of 1987 or more than a year before suit was filed. The district court, however, denied the motion for summary judgment because it believed that the defendant may have concealed its identity as a successor to Questor and, thus, tolled the statute of limitations.

After further discovery, it became clear that there was no fraudulent concealment by the defendant. At this point, the plaintiffs asserted that the obligation to pay premiums was an installment contract and, thus, they were free to bring their action at any time. The plaintiffs asked the district court to reconsider its ruling that the claims accrued no later than September of 1981. The district court rejected this premise of an installment contract and reaffirmed its conclusion that the action accrued no later than September of 1981. The plaintiffs appeal from this decision regarding the date of accrual. Neither the plaintiffs nor the defendant challenge the district court's determination that the statute of limitations is six years. Consequently, the court will not address the statute of limitations issue, but will focus only on the accrual issue.

In addition to these facts, there is some other information which is relevant only to the jurisdictional issue. When the suit was originally filed in the United States District Court for the Western District of Michigan, the complaint listed the names of 92 individual plaintiffs. In accordance with the discretion conferred by Rule 10(a) of the Federal Rules of Civil Procedure, all subsequent pleadings in the district court were captioned as "Biros, Sovis, et al." When

the notice of appeal was filed, however, the plaintiffs, rather than listing all 92 names, continued to use the caption "Biros, Sovis, et al."

Furthermore, although it is clear that all 92 individuals wished to appeal, only Mr. Biros and Mr. Sovis were mentioned in the body of the notice of appeal. Prior to oral argument, we discovered the omission and asked the parties to brief the issue of whether this failure specifically to name the other 90 individuals means that this court lacks jurisdiction over their appeal.

■ As an initial matter, we address the issue of whether we have jurisdiction over the 90 unnamed individuals. In *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), the Supreme Court held that Rule 3(c) of the Federal Rules of Appellate Procedure should be strictly construed and enforced. In *Tennessee Minority Employees v. State of Tennessee*, 901 F.2d 1327 (6th Cir.), *cert. denied sub nom. Davis v. Tennessee Dep't Employment Sec.*, —— U.S. ——, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990), this court, sitting en banc, applied Torres and held that "failure to comply with Rule 3(c)'s requirement of specifying the party or parties taking the appeal is a jurisdictional bar...." *Id.* at 1331–32. Thus, the court concluded that, unless the party is named in either the caption to the notice of appeal or in the body of the notice of appeal, the court would not have jurisdiction over the party's appeal. Consequently, after applying *Tennessee Minority Employees* and *Torres* to the present case, we are forced to conclude that the use of the phrase *"et al."* in the present notice of appeal, which was specifically rejected in *Torres*, is contrary to the language and spirit of *Torres*, and precludes a conferment of jurisdiction over the appeal of the individual plaintiffs. *Tennessee Minority Employees*, 901 F.2d at 1332. Accordingly, we have no choice but to hold that we have no jurisdiction over the 90 plaintiffs who are not named in the notice of appeal. Therefore, the only

plaintiffs in this case are Mr. Biros and Mr. Sovis.

■ Having determined that this appeal involves only Mr. Biros and Mr. Sovis, we now turn to the issue of whether 29 U.S.C. § 1001 *et seq.* (ERISA) provides the exclusive remedy for plaintiffs. All parties assert that ERISA does not preempt the § 301 action and that an action could be maintained under either statute or both simultaneously. We agree. The court's decisions make it clear that such an action may be brought under ERISA, *Musto v. American Gen. Corp.*, 861 F.2d 897 (6th Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989), or under § 301, *International Union, United Automobile, Aerospace, and Agric. Implement Workers of Am. v. Yard–Man, Inc.*, 716 F.2d 1476 (6th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984), or both statutes simultaneously, *Smith v. ABS Indus. Inc.*, 890 F.2d 841 (6th Cir.1989). *See also* S. Bruce, *Pension Claims: Rights And Obligations* 691 (1988). Accordingly, we conclude that ERISA is not the exclusive remedy and that the plaintiffs may maintain an action under § 301. *United Steelworkers v. Cyclops Corp.*, 860 F.2d 189, 196 (6th Cir. 1988); *ABS Indus.*, 890 F.2d 841.

■ Having determined that our jurisdiction is limited to Mr. Biros and Mr. Sovis and that ERISA is not the exclusive remedy, we now turn to the question of when the § 301 cause of action accrued.

Because the facts are undisputed, the district court's conclusion as to the date of accrual is entirely a question of law.

It is clear that § 301 does not explicitly provide for either a period of limitations or a rule of accrual. It is equally clear that in such a situation, the federal courts must look to the most analogous state statute for the period of limitations, *International Union, United Automobile, Aerospace & Agric. Implement Workers of Am. v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703–04,

86 S.Ct. 1107, 1111–12, 16 L.Ed.2d 192 (1966), but must look to federal law for the rule of accrual, *Gaudin v. KDI Corp.*, 576 F.2d 708, 711–12 (6th Cir.1978). Thus, in determining if the district court's conclusion regarding the rule of accrual was incorrect as a matter of law, we must determine if there is federal common law which supports the conclusion that the action accrued no later than September of 1981.

A review of federal common law reveals that the district court's conclusion is supported. In *Adkins v. International Union of Elec., Radio, and Machine Workers Local 801*, 769 F.2d 330 (6th Cir.1985), the court was faced with a situation where, as in the present case, the company and union had entered into an agreement which substantially changed the plaintiffs' rights from what they had been under previous contracts. In determining the date of accrual of the § 301 action, the court held that "[a] claim accrues ... when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Id.* at 335. *Accord Auto Workers*, 383 U.S. at 707, 86 S.Ct. at 1114. If the Adkins standard were applied to the present case, the date of accrual would be sometime in the summer of 1981. Similarly, in cases where, as here, the employer has discontinued payments to an employee benefit program, the National Labor Relations Board has found the date of accrual to be the date of discontinuance of payments. *See, e.g., Chemung Contracting Corp.*, 129 L.R.R.M. (BNA) 1305 (NLRB 1988).

Despite these authorities, the plaintiffs contend that the district court's decision is incorrect as a matter of federal law because the obligation to pay insurance premiums was an installment contract. Under the plaintiffs' theory, there are numerous separate actions. A particular action would not accrue until the installment comes due and remains unpaid.

We find the plaintiffs' theory of an installment contract to be without merit. It is clear that, in order to be considered an installment contract, the document must involve a "sum certain." In the present case, there is no obligation on the part of the defendant to pay a "sum certain." Rather, the defendant simply was obligated "to pay the costs of the insurance program," a cost which could be great or small depending upon the circumstances, but definitely was not certain.

Even if there were merit to the plaintiffs' theory, which we doubt, we clearly would be precluded from adopting it if such an adoption would undermine federal labor policy. *See DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 161, 103 S.Ct. 2281, 2289, 76 L.Ed.2d 476 (1983). As observed *supra*, judicial interpretation of federal labor policy supports the early accrual date as determined by the district court. We believe that the adoption of the plaintiffs' theory would undermine those authorities, would create utter chaos in this nation's labor jurisprudence, and would constitute judicial activism of the worst type.

Because there is a substantial amount of authority for the district court's conclusion, we cannot say that the district court's conclusion regarding accrual was incorrect as a matter of law. Furthermore, we find the plaintiffs' theory, that the obligation to pay insurance premiums was an installment contract, to be without merit. Accordingly, the judgment of the district court is AFFIRMED.